IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

CASE NO. _____

LEGACY DATA ACCESS, INC., a )
Georgia corporation, and DIANNE M. )
PETERS, a Georgia resident, )
 )
    Plaintiffs, )
 )
v. ) **COMPLAINT**
 )
CADRILLION, LLC, a North Carolina )
limited liability company, LEGACY )
DATA ACCESS, LLC, a North Carolina )
limited liability company and JAMES )
YUHAS, a North Carolina resident, )
 )
    Defendants. )
 )

Plaintiffs Legacy Data Access, Inc. and Dianne M. Peters bring this action pursuant to 28 U.S.C. §1332, seeking money damages and other relief against Cadrillion, LLC, Legacy Data Access, LLC and James Yuhas, and allege and say as follows:

### PARTIES JURISDICTION AND VENUE

1. Legacy Data Access, Inc. (hereinafter "LDA GA"), is a corporation formed and organized under the laws of the State of Georgia, with its principal place of business in Marietta, Georgia and conducting business in Georgia.

2. Dianne M. Peters (hereinafter "Mrs. Peters") is a citizen of the United States and a resident of Georgia. Mrs. Peters is an officer/director of LDA GA.

3. Cadrillion, LLC (hereinafter "Cadrillion") is a North Carolina limited liability company with its principal place of business and conducting business in Mecklenburg

1

County, North Carolina. Cadrillion's members and owners consist of a citizen and resident of South Carolina, a citizen and resident of North Carolina and, upon information and belief, four North Carolina family trusts, each with North Carolina trustees and beneficiaries, all of whom are citizens of the United States and residents of North Carolina.

4. Legacy Data Access, LLC (hereinafter "LDA NC") is a North Carolina limited liability company with its principal place of business in Mecklenburg County, North Carolina. LDA NC's members and managers are North Carolina residents.

5. Jim Yuhas is an adult citizen of the United States and resident of the State of North Carolina.

6. Upon information and belief, at all times relevant to the actions alleged herein, Yuhas controlled LDA NC and Cadrillion. As the alter ego of LDA NC and Cadrillion, Yuhas permitted and directed LDA NC and Cadrillion to act in the manners that they did and, therefore, Yuhas is jointly and severally liable for all action and inaction of LDA NC and Cadrillion in regard to the allegations set forth herein.

7. Jurisdiction is proper pursuant to 28 U.S.C. §1332, in that the parties are citizens of different states and the amount of controversy exceeds Seventy Five Thousand Dollars ($75,000), exclusive of interest, costs and attorney's fees.

8. Venue is proper in this District because all of the Defendants are residents in the Western District of North Carolina and, pursuant to 28 U.S.C. §1391(b)(2)(3), a substantial part of the events and lack of events giving rise to these claims arose in this District. In addition, each of the Defendants are subject to personal jurisdiction in this District.

## FACTUAL ALLEGATIONS

9.     LDA GA, Mrs. Peters and Cadrillion executed an Asset Purchase Agreement (hereinafter the "APA") effective October 21, 2011, pursuant to which LDA GA sold, transferred and assigned certain of its assets to Cadrillion. A copy of the APA is attached hereto as Exhibit A, without attachments.

10.     Cadrillion formed LDA NC to own the assets it acquired from LDA GA.

11.     As a condition of the APA, Mrs. Peters entered into a written Employment, Non-Disclosure and Non-Competition Agreement (hereinafter the "Employment Agreement") with LDA NC. The initial term of the Employment Agreement began on October 21, 2011 and lasted for three (3) years. The Employment Agreement automatically renewed for additional one (1) year term unless either party provided the other with written notice of the party's intent to not renew the Employment Agreement at least thirty (30) days (but not more than ninety (90) days) before the end of the then current term.

12.     Cadrillion agreed to purchase LDA GA's assets for a price, the sum of which was: (1) a cash payment of $513,000 on the closing date and (2) the "Deferred Purchase Price". LDA GA has an equitable interest in LDA NC until such time as Cadrillion pays LDA GA the full Deferred Purchase Price.

13.     As part of the asset purchase, Cadrillion loaned LDA GA and Mrs. Peters certain monies to pay and discharge tax obligations arising from the APA (hereinafter the "Loan").

14.     When Cadrillion exercised its "Call Option" under the APA, the Deferred Purchase Price would then equal the "Call Price." The "Deferred Purchase Price," "Call

Price" and "Call Option" are defined in the attached APA and those definitions are incorporated herein by reference.

15. Cadrillion paid $513,000 to LDA GA on October 21, 2011.

16. On July 23, 2014, Mrs. Peters tendered resignation of her employment with LDA NC, such resignation being effective on October 21, 2014.

17. Mrs. Peters' resignation complied in all respects with the APA and her Employment Agreement, and Cadrillion and LDA NC acknowledged as much.

18. Mrs. Peters' resignation of her employment from LDA NC triggered an "Option Period" of ninety (90) days (the "Option Period" being defined in the APA), whereby Cadrillion, in its sole discretion, had the right, but not the obligation, to purchase from LDA GA the rights to the Deferred Purchase Price at the Call Price, as those terms are defined in the APA.

19. By letter addressed to both LDA GA and Mrs. Peters dated January 15, 2015, Cadrillion exercised the Call Option.

20. When Cadrillion exercised the Call Option on January 15, 2015, Cadrillion was required to deliver the Call Price to LDA GA, or its permitted assignee, on or before February 18, 2015.

21. The Call Price must be calculated in accordance with Generally Accepted Accounting Principles (hereinafter "GAAP") and in accordance with various definitions, formulas and other express terms set forth in the APA.

22. On January 29, 2015, Cadrillion and Yuhas instructed their Certified Public Accountant (hereinafter "CPA") to deliver an "Updated Draft Agreed-Upon Procedures

Report," along with supporting files, which identified and described what Cadrillion believed was the Call Price/Deferred Purchase Price.

23. Pursuant to Cadrillion's calculation, the Call Price/Deferred Purchase Price which Cadrillion believed it owed LDA GA pursuant to the option Cadrillion exercised, was at least $1,129,538.

24. The Call Price/Deferred Purchase Cadrillion owes LDA GA actually exceeds $1,129,538.

25. Upon timely payment of the Call Price/Deferred Purchase Price, Mrs. Peters is obligated to repay the Loan. As of January 29, 2015, Cadrillion asserted that the Loan Balance equaled $176,436. In the event Cadrillion properly calculated the Loan balance, as of January 29, 2015, the net sum Cadrillion believed it owed to Mrs. Peters for payment of the Call Price, less the Loan balance (hereinafter the "Net Call Price"), is an amount not less than $953,101.

26. On February 5, 2015, Yuhas delivered an email to his attorney (Mr. Smoak) with instructions that Mr. Smoak forward Mr. Yuhas' email directly to Mrs. Peters' counsel. A copy of the email is attached hereto as Exhibit B.

27. As of February 5, 2015, Cadrillion did not dispute that it owed LDA GA at least $953,101 as the Net Call Price. LDA GA believes the Call Price/Deferred Purchase Price is in excess of the $1,129,538 Cadrillion's CPA calculated.

28. In conjunction with the email Mr. Yuhas delivered to Mrs. Peters' counsel, Yuhas told Mrs. Peters that she would receive the reduced Call Price/Deferred Purchase Price Cadrillion's CPA calculated, if and only if Mrs. Peters executed a unilateral

5

agreement prepared by Yuhas, extending her post-employment obligations beyond those set forth in the APA and the Employment Agreement.

29. Yuhas further demanded that Mrs. Peters execute an agreement releasing Cadrillion and Yuhas (along with others) and accept the Call Price/Deferred Purchase Price in an amount less than that calculated by Cadrillion's own CPA, unilaterally altering the payment terms to allow Cadrillion more than two years to pay the principal amount of the Call Price/Deferred Purchase Price, without the inclusion of interest on the deferred payment amounts.

30. Yuhas demanded that Ms. Peters accept the unilateral proposal by the close of business the following day, February 6, 2015.

31. Cadrillion owes LDA GA an amount of money in excess of $1.00.

32. On February 13, 2015, Cadrillion filed a Complaint in the United States District Court for the Western District of North Carolina, Charlotte Division. That case was captioned *"CADRILLION, LLC, a North Carolina Limited Liability Company, Plaintiff v. LEGACY DATA ACCESS, INC., a Georgia corporation, and DIANNE M. PETERS, Defendants,"* and bore Docket No. 3:15-cv-00073 (hereinafter the "First Litigation").

33. In its Complaint, Cadrillion sought a declaratory judgment action, contending that there was a current dispute between Cadrillion, on the one hand, and LDA GA and Mrs. Peters, on the other hand, "as to (a) the appropriate calculation of the maximum value of the Call Price pursuant to the terms of the APA (and applicable equitable principles), and Defendants' entitlement to, in whole, in part, or at all, (b) the balance of the loan, (c) the right to Plaintiff to offset the balance of the loan against payment of the Call Price (if any), and (d) the effectiveness of Plaintiff's tender of the maximum calculated amount of

6

$460,406 as satisfaction and extinguishment of any and all further rights of Defendants in or with respect to the Call Price…"

34. On February 15, 2015, Cadrillion also filed in the First Litigation a Motion to Deposit Funds With The Clerk of Court, along with an accompanying Memorandum of Law.

35. Cadrillion's Complaint and Motion to Deposit Funds With The Clerk were assigned to the Honorable Frank D. Whitney, United States District Court Judge and the Honorable David C. Keesler, United States Magistrate Judge.

36. In its Complaint in the First Litigation, Cadrillion admitted that it exercised the Call Option (¶ 11 of the Complaint in the First Litigation), that the APA requires Cadrillion to deliver the Call Price to LDA GA by February 18, 2015 (¶ 12 of the Complaint in the First Litigation), that the Call Price must be calculated according to GAAP (¶ 13 of the Complaint in the First Litigation), and that it calculated the Call Price which it owed LDA GA to be at least $460,406 (¶ 22 of the Complaint in the First Litigation).

37. On March 10, 2015, LDA GA and Mrs. Peters timely filed and served their Memorandum of Law in Opposition to Cadrillion's Motion to Deposit Funds With The Clerk of Court.

38. On March 11, 2015, Cadrillion dismissed its Complaint against LDA GA and Mrs. Peters, without prejudice.

39. Cadrillion's attempt to extinguish its contract rights as set forth in the APA and evade liability for breaching its contractual obligations, by seeking to deposit the Deferred Purchase Price it knew and knows it owes LDA GA, constitutes an abuse of process.

7

40. Cadrillion's conduct in filing the First Litigation and attempting to extinguish its contractual rights by seeking to deposit the Call Price/Deferred Purchase Price it knew and knows it owes LDA GA was an abuse of process, was done for the purposes of delay and done in an attempt to deprive LDA GA and Mrs. Peters of the funds they are owed in order to create financial hardship upon Mrs. Peters, all while Defendants continue to seek to enforce a non-competition covenant against Mrs. Peters, in an attempt to preclude her from earning her full potential income.

41. Cadrillion, LDA GA and Yuhas all acknowledge that LDA GA is entitled to the Call Price/Deferred Purchase Price, in whatever amount Defendants calculate the Call Price/Deferred Purchase Price to be. Plaintiffs made demand upon all of the Defendants for whatever amount Defendants conclude is the Call Price/Deferred Purchase Price.

42. In lieu of delivering the Call Price/Deferred Purchase Price to Plaintiffs as required by the APA, LDA NC and Cadrillion, directly and through Yuhas, filed a frivolous lawsuit in the United States District Court, Western District of North Carolina, improperly seeking to deposit its calculation of the Call Price/Deferred Purchase Price, to the exclusion of Plaintiffs.

43. After receiving a Memorandum of Law in Opposition to Cadrillion's Motion to Deposit Funds With the Clerk, Cadrillion, at the direction of Yuhas, filed a Voluntary Dismissal Without Prejudice. Despite its dismissal without prejudice, Cadrillion, individually and through LDA NC and Yuhas, failed and refused to deliver any amount of the Call Price/Deferred Purchase Price to LDA GA.

44. Defendants' actions have caused real and substantial damages to the Plaintiffs, such amount exceeding Seventy Five Thousand Dollars ($75,000), exclusive of interest, costs and attorney's fees.

### FIRST CLAIM FOR RELIEF
### [Breach of Contract]

45. Plaintiffs restate and reallege the allegations contained above, as if fully set forth herein.

46. Cadrillion's failure to tender the Call Price/Deferred Purchase Price to LDA GA constitutes a breach of the APA.

47. LDA GA has fully performed and completed all of its obligations required under the APA, entitling it to receive the Call Price/Deferred Purchase Price. Mrs. Peters has fully performed all of her obligations required under the Employment Agreement, entitling LDA GA to receive the Call Price/Deferred Purchase Price.

48. Cadrillion exercised its Call Option, and is therefore obligated to pay LDA GA the Call Price/Deferred Purchase Price.

49. LDA GA made repeated demands to Cadrillion that Cadrillion fully comply with the terms of the APA, including but not limited to demanding that Cadrillion tender to LDA GA the Call Price/Deferred Purchase Price, in whatever amount Cadrillion determines to be the proper and correct Call Price/Deferred Purchase Price.

50. Cadrillion has failed and refused to tender any portion of the Call Price/Deferred Purchase Price to LDA, such action constituting a material breach of the APA.

51. Cadrillion and Yuhas agreed to tender a reduced Call Price/Deferred Purchase Price to LDA GA and Mrs. Peters: (a) only if Mrs. Peters agreed to extend her

9

non-competition and other post-employment obligations to LDA NC; and, (b) only if LDA GA and Mrs. Peters agreed to accept the Call Price/Deferred Purchase Price over a period of years, as opposed to a lump sum payment as the parties agreed in the APA.

52. Cadrillion and Yuhas informed Mrs. Peters that Cadrillion would not tender any amount of the Call Price/Deferred Purchase Price unless Mrs. Peters and LDA GA agreed to terms and conditions that are detrimental to Plaintiffs, beneficial to Defendants and inconsistent with the parties' contract terms as set forth in the APA.

53. Defendants repeatedly admitted that they owe LDA GA at least some amount of money as the Call Price/Deferred Purchase Price. Despite acknowledging that Cadrillion owes LDA GA some amount of money as the Call Price/Deferred Purchase Price, it used its superior position and power to deprive LDA GA of the Call Price/Deferred Purchase Price, which LDA GA is unquestionably entitled to receive.

54. Cadrillion then filed a frivolous lawsuit in an effort to further deprive LDA GA of the Deferred Purchase Price, which it then dismissed, without prejudice, after reading that its position frivolous and without merit. Despite its dismissal, Cadrillion, through Yuhas, has failed and refused to deliver any of the Deferred Purchase Price to LDA GA.

55. In an effort to suppress the Call Price/Deferred Purchase Price, Yuhas instructed their and Cadrillion's CPA to include certain expenses that are not properly included in the calculation of the Call Price/Deferred Purchase Price and to exclude certain income that should be properly included in the calculation of the Call Price/Deferred Purchase Price.

56. Despite repeated demands, Cadrillion has failed and refused to provide Mrs. Peters and LDA GA with certain financial statements in GAAP format which are required

by the APA. Such refusal to provide the requested financial information has hampered Mrs. Peters and LDA GA's ability to properly calculate the Call Price/Deferred Purchase Price which is owed by Cadrillion under the APA.

57. As a direct and proximate result of Defendants' breach of contract, breach of the covenant of good faith and fair dealing, all accompanied by Defendants' aggravating actions and other factors, Plaintiffs are entitled to damages exceeding Seventy Five Thousand Dollars ($75,000), exclusive of interest, costs and attorney's fees.

## SECOND CLAIM FOR RELIEF
### [Conversion]

58. Plaintiffs restate and reallege the allegations contained above, as if fully set forth herein.

59. Defendants' actions in failing and refusing to tender to LDA GA that portion of the Call Price/Deferred Purchase Price they calculate is owed to LDA GA, constitutes an unauthorized assumption and exercise of ownership rights over the Call Price/Deferred Purchase Price, which undoubtedly and knowingly belongs to LDA GA.

60. LDA GA made demand upon all Defendants that they deliver whatever they believe to be the appropriate Call Price/Deferred Purchase Price to LDA GA, but all Defendants have refused to tender any portion of Cadrillion's calculated Deferred Purchase Price to LDA GA.

61. Defendants' actions constitute a conversion of LDA GA's property.

62. Defendants' conversion of LDA GA's property (the Call Price/Deferred Purchase Price) is to the exclusion of LDA GA, the rightful owner of the Call Price/Deferred Purchase Price, and prevents LDA GA from asserting its right of ownership and possession over the same.

11

63. As a direct and proximate result of Defendants' conversion, LDA GA has been damaged in an amount to be determined at trial.

64. Defendants' conversion is and was malicious, intentional, willful, and with a reckless and wanton disregard of Plaintiffs' rights. Plaintiffs are therefore entitled to recover punitive damages from Defendants, jointly and severally, pursuant to North Carolina General Statute §1D-1, *et seq.*

### THIRD CLAIM FOR RELIEF
### [Abuse of Process]

65. Plaintiffs restate and reallege the allegations contained above, as if fully set forth herein.

66. When Cadrillion, through Yuhas, filed the First Litigation, they did so with an ulterior motive to achieve a collateral purpose, not contemplated within the normal scope of the process used -- namely to: (a) delay LDA GA's right to receive the Call Price/Deferred Purchase Price; (b) deprive LDA GA of Cadrillion's own undisputed calculation of the Call Price/Deferred Purchase Price; and, (c) attempt to satisfy Cadrillion's legal/contractual obligations under the APA so it could force Mrs. Peters to continue to comply with certain non-competition and other covenants, while simultaneously seeking to deprive Mrs. Peters and LDA GA of the compensation upon which such covenants were based, while simultaneously depriving LDA GA of a right to assert a breach of contract counterclaim, among other claims, in the First Litigation.

67. Within hours of receiving LDA GA's Memorandum of Law in Opposition to the Motion to Deposit Funds, Cadrillion, at the direction of Yuhas, filed a Dismissal of the First Litigation, without prejudice.

68. Upon information and belief, Defendants dismissed the First Litigation without prejudice, because: (a) they knew at least a portion of Cadrillion's calculated Call Price/Deferred Purchase Prices was/is not in dispute; and, (b) they knew that they had an obligation, at minimum, to deliver to LDA GA the undisputed portion of the Call Price/Deferred Purchase Price.

69. Despite knowing that some amount of the Call Price/Deferred Purchase Price is not in dispute, Defendants have failed and refused to deliver the undisputed portion of the Call Price/Deferred Purchase Price to LDA GA, in an effort to deprive LDA GA of its money, in large part, to prevent LDA GA from having resources to defend the First Litigation and/or prosecute any claims against the Defendants.

70. Defendants used and intended to use the First Litigation as a vehicle to gain advantage over Plaintiffs, in at least, but not limited to, the ways described above.

## FOURTH CLAIM FOR RELIEF
[Unfair and Deceptive Trade Practices]

71. Plaintiffs restate and reallege the allegations contained above, as if fully set forth herein.

72. Defendants engaged in acts and practices, as described above, that are unfair and deceptive and that offend established public policy. Defendants' acts and practices are unfair, immoral, unethical, oppressive, unscrupulous, and substantially harmful to Plaintiffs. Defendants used their position of power against Plaintiffs. Such actions of Defendants Cadrillion and LDA NC were undertaken at the direction of Defendants Yuhas. In addition, Defendants' conduct, as described above, constitutes substantial aggravating factors that accompanied Defendants' breach of the APA.

13

73. Defendants acts and practices, as alleged above, constitute unfair and deceptive acts and practices, in or affecting commerce, in violation of North Carolina General Statute §75-1.1, *et seq*.

74. As a direct and proximate result of Defendants' unfair and deceptive acts and/or practices, Plaintiffs have suffered damages in excess of Seventy Five Thousand Dollars ($75,000), exclusive of interest, costs and attorney's fees, entitling them to treble damages and reasonable attorney's fees.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for the following relief:

1. That a judgment be entered against Defendants Cadrillion, LDA NC and Yuhas, jointly and severally, for their breach of contract, and that it be found that Defendants' conduct was accompanied by aggravating and egregious circumstances.

2. That a judgment be entered against all Defendants, jointly and severally, for their act of conversion, and that Plaintiff recover treble damages and/or punitive damages as allowed by law.

3. That a judgment be entered against all Defendants, jointly and severally, for their abuse of process, including punitive damages.

4. That a judgment be entered against all Defendants, jointly and severally, for Defendants' unfair and deceptive trade practices, and that those damages be trebled, as allowed by law.

5. That Plaintiffs recover their attorney's fees as permitted under the APA, the Employment Agreement and pursuant to North Carolina General Statute § 75-16.1.

6. That all issues triable by a jury be so tried.

7. For all other relief, both legal and equitable, which the Court deems just and proper.

This the 14th day of April, 2015.

                                                          **JAMES, McELROY & DIEHL, P.A.**

                                                          _s/ John R. Buric_
                                                          John R. Buric,
                                                          N.C. State Bar No. 22688
                                                          600 South College Street
                                                          Suite 3000
                                                          Charlotte, North Carolina 28202
                                                          Telephone: (704) 372-9870
                                                          Facsimile: (704) 333-5508
                                                          Email: jburic@jmdlaw.com
                                                          _Attorney for Plaintiffs_