IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Charlotte Division

| | |
|---|---|
| LEGACY DATA ACCESS, INC., a Georgia corporation, and DIANNE M. PETERS, a Georgia resident, <br><br> Plaintiffs, <br><br> v. <br><br> CADRILLION, LLC, a North Carolina limited liability company, LEGACY DATA ACCESS, LLC, a North Carolina limited liability company, and JAMES YUHAS, a North Carolina resident, <br><br> Defendants. | CIVIL ACTION NO. 3:15-CV-00163 |

## REPLY IN SUPPORT OF MOTION TO DISMISS AND FOR ATTORNEYS' FEES

## BOTTOM LINE UP FRONT

In their Response, LDA GA[1] and Peters selectively quote numerous cases and misconstrue relevant law in an effort to save their claims against Yuhas.[2] For the reasons stated herein, as well as those stated in the Brief, Plaintiffs have failed to state any valid theory to impose individual liability upon Yuhas and have failed to provide any relevant support for their claims 1) that Cadrillion exercised the Call Option, 2) that Yuhas converted the Call Price, 3) that Yuhas committed an abuse of process, or 4) that Yuhas violated the UDTPA. Plaintiffs' efforts to turn a contract dispute into individual tort liability against Yuhas must fail as a matter of law.

---

[1] Capitalized terms not otherwise defined shall have the definition as provided in Defendants' Brief in Support of Motion to Dismiss and for Attorneys' Fees (the "Brief") (Doc. # 13.)
[2] Defendants concede the Amended Complaint moots Cadrillion and LDA NC's Motion to Dismiss, and this Reply relates only to Yuhas.

{00263920 v 1 }

1

**LEGAL ARGUMENT**

**I.    Plaintiffs Failed to Plausibly Allege Claims Against Yuhas**

Plaintiffs assert two potential theories to hold Yuhas individually liable: 1) piercing the corporate veil; and 2) Yuhas' alleged responsibility for his own torts.  Plaintiffs have failed to plausibly allege any claim to pierce the corporate veil and have failed to allege that Yuhas committed any individual tort.

A.  <u>Plaintiffs Fail to Plausibly Allege Claim for Piercing Corporate Veil</u>

In order for the Complaint to survive a Rule 12(b)(6) motion:

> The facts alleged must "raise a right to relief above the speculative level," and the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Tong v. Dassault Systemes Simulia Corp.*, 2012 U.S. Dist. LEXIS 130592, *10 (E.D.N.C. Sept. 13, 2012)

It is well-settled North Carolina law that "[t]he instrumentality rule allows for the corporate form to be disregarded if the corporation is so operated that it is a mere instrumentality or *alter ego* of the sole or dominant shareholder." *In re Hurst*, 2013 N.C. App. LEXIS 843, *12, 748 S.E.2d 568, 573-74 (N.C. App. Aug. 6, 2013) (internal citations omitted).

> The "instrumentality rule" consists of three elements: (1) the domination and control of the corporate entity; (2) the use of that domination and control to perpetrate a fraud or wrong; and (3) the proximate causation of the wrong complained of by the domination or control.  Four factors are of primary importance in deciding whether to disregard the separate corporate entity under the instrumentality rule: (1) inadequate capitalization; (2)

noncompliance with corporate formalities; (3) complete domination and control of the corporation so that it has no independent identity; and (4) excessive fragmentation of a single enterprise into separate corporations.

*Tong*, 2012 U.S. Dist. LEXIS 130592 at *12 (internal citations omitted).

Here, Plaintiffs make only one allegation in support of their claim to pierce the corporate veils of LDA NC and Cadrillion which states, in part, "[u]pon information and belief, at all times relevant to the actions alleged herein, Yuhas controlled LDA NC and Cadrillion." (Complaint, ¶ 6.) Plaintiffs' do not allege the three elements of a veil piercing claim—much less any of the four factors considered above—but instead allege nothing more than unsupported conclusions, which are wholly inadequate to state a plausible claim to pierce the corporate veil. *Id.* at *14-*15 (collecting cases and finding complaint insufficient where "[p]laintiff has not addressed each of the aforementioned factors.")

B. <u>Plaintiffs Fail to Allege any Individual Tort Committed by Yuhas</u>

Plaintiffs' Complaint is devoid of any allegation that Yuhas individually committed any of the alleged tortious acts or that Yuhas owed any independent duty to Plaintiffs. Plaintiffs' conversion, abuse of process, and UDTPA claims are based solely on Cadrillion's alleged actions which were allegedly taken "through Yuhas" or "at the direction of Yuhas." Complaint, ¶¶ 66, 67, 72. "NC. Gen. Stat. § 57C-3-30(a) is clear, that in the absence of an independent duty, mere participation in the business affairs of a limited liability company by a member is insufficient, standing alone and without a showing of some additional affirmative conduct, to hold the member independently liable for harm caused by the LLC." *Hurst*, at *11, 748 S.E.2d at 573. Because Plaintiffs have failed to allege any plausible basis to hold Yuhas individually liable, Plaintiffs' Complaint against Yuhas should be dismissed with prejudice. To the extent

Yuhas can be held liable for the alleged actions of Cadrillion, Plaintiffs' claims still fail for the reasons stated below.

## II.     Cadrillion Did Not Effectively Exercise Call Option

In support of its position that Cadrillion effectively exercised the Call Option, Plaintiffs rely primarily on three cases, all of which are inapposite to the situation here.

In *Kidd v. Early*, the option at issue provided that the purchase price would be $600 per acre with the number of acres to be determined by a survey later provided by the sellers. 298 N.C. 343, 361-62, 222 S.E.2d 392, 405 (1976). The court found that "until defendants provided plaintiffs with the survey . . . plaintiffs could not know the acreage involved and therefore could not determine the full amount of the purchase price." *Id.* at 362, 222 S.E.2d at 405. Similarly, the option in *International Speedways, Inc. v. Aman* contained "no provision for payment or tender of payment until the survey had been completed." 1 N.C. App. 227, 230, 161 S.E.2d 50, 52 (1968). In those cases, the court logically reasoned that without knowing the full amount of the purchase price based on the to-be-provided survey, the plaintiff's tender of payment could not be required to exercise the option. The reasoning above is irrelevant here as Cadrillion was fully capable of determining the Call Price.

In *Kottler v. Martin*, the option did "not provide when the payment of the purchase price [was] to be made," and the court held that the payment was not required until a deed was delivered. 241 N.C. 369, 373, 74, 85 S.E.2d 314, 318 (1955). Here, the Call Option specifies when the Call Price was to be paid rendering *Kottler* inapplicable. These cases cited by Plaintiffs simply miss the point.

However, *Esteel Co. v. Goodman*, another case cited by Plaintiffs, provides a relevant, on-point analysis of nearly identical option language. 82 N.C. App. 692, 348 S.E.2d 153 (1986).

Like the Call Option, the language at issue in *Goodman* granted an option to purchase "with balance due of purchase price payable within 30 days of notification by lessee to lessor of election to purchase machine." *Id.* at 696, 348 S.E.2d at 156. The defendant, like Plaintiffs here, argued that mere notice of his election to purchase was sufficient to exercise the option and that "payment within 30 days was merely a condition subsequent to the sale, giving rise only to a claim . . . for the balance of the purchase price." *Id.* at 697, 348 S.E.2d at 157.

Conversely, the plaintiff, like Defendants here, contended that "under the terms of the agreement both notification and payment were necessary to exercise the option." *Id.* The Court of Appeals held that the trial court properly construed the option and that "the agreement requires payment of the purchase price within thirty days of notification in order to effectively exercise the option and pass title." *Id.*

*Goodman* is identical to the issues presented here and directly contradicts Plaintiffs' position. As the Call Option was not effectively exercised, no contract exists between the parties, and Plaintiffs' breach of contract claim should be dismissed.

### III. Plaintiffs Fail to State a Claim for Conversion

In support of their claim for conversion, Plaintiffs point to *Lake Mary L.P. v. Johnston*, which is irrelevant to the issue presented here and, in fact, provides support for Yuhas' position. 145 N.C. App. 525, 551 S.E.2d 546 (2001). In *Lake Mary*, pursuant to a purchase agreement, the plaintiff acquired ownership of all rent checks paid by tenants, and defendant was to provide tenants notice to forward said rent checks to plaintiff. *Id.* at 528, 551 S.E.2d at 550. Defendant failed to provide this notice, and as the rent checks were mailed to defendant, he kept them and deposited them into his own account. *Id.* In assuming ownership and control over these tangible checks, the defendant converted them. *Id.* at 532, 551 S.E.2d at 552. *Lake Mary* did not concern

money owed under a contractual right of payment, but rather the unauthorized possession and control of tangible checks that were undisputedly owned by the plaintiff. *Id.*

As stated by Plaintiffs, "[t]he Call Price thus represents money Cadrillion still owes Legacy-GA for those assets." (Doc. # 22, p. 12.) By Plaintiffs' own admission, the Call Price, at most, is money allegedly owed (by Cadrillion and not Yuhas) based on a *contractual right*. The money at issue was never possessed or owned by Plaintiffs, and Cadrillion took no action other than allegedly refusing to pay it. If Plaintiffs' argument is accepted, an alleged breach of *any* contract (i.e. a promissory note) which requires the payment of money would give rise to a claim for conversion. That is simply not the law in North Carolina.

### IV. Plaintiffs Fail to State a Claim for Abuse of Process or UDTPA

First, Yuhas was not a party to the First Litigation, and Plaintiffs cite no case wherein a non-party to the litigation was found liable for abuse of process. Moreover, despite their best efforts, Plaintiffs still fail to allege (or argue) any improper action taken by Cadrillion after issuance of the process. Cadrillion filed a complaint and a motion, but, even assuming an ulterior motive, Cadrillion did not *accomplish* anything. After Plaintiffs opposed the Rule 67 Motion, Cadrillion dismissed the entire action, which is what Plaintiffs wanted, and Plaintiffs then filed suit for breach of contract, which is what Plaintiffs allege Cadrillion was improperly attempting to avoid. At most, Plaintiffs' have alleged that Cadrillion *attempted* to use the First Litigation to accomplish an improper purpose, but there is no civil claim for an *attempted* tort. Plaintiffs cannot plausibly or rationally state a claim for abuse of process in this instance.

As stated in the Brief, Plaintiffs' allege (and argue) nothing more than threadbare recitations of the elements of their UDTPA claim in an effort to convert a contract dispute into a tort action with potential treble damages and attorneys' fees. These claims should be dismissed.

## V. Yuhas May Dispute the Effective Exercise of Call Option

In a creative attempt to foreclose Yuhas from disputing the effective exercise of the Call Option, Plaintiffs cite the "mend the hold" doctrine and loosely quote a North Carolina case for the proposition that this doctrine applies "in two different proceedings." (Doc. # 22, p. 9.) The referenced case, however, only prohibited an insurer from avoiding coverage by asserting inconsistent factual positions "unless the change is based on new information that could not have been obtained at the time of the prior action or other changed circumstances." *Rottmund v. Continental Assurance Co.*, 813 F. Supp. 1104, 1110-11 (E.D. Penn. 1992).

Here, whether the Call Option was effectively exercised is a legal issue, and the determination of the issue depends, at least in part, on the new fact that Cadrillion's attempted tender of the Call Price to the Court was rejected by Plaintiffs and that the time for exercising the Call Option has since expired. The "mend the hold" doctrine is irrelevant here due to, among other reasons, the change in circumstances between the time of the First Litigation and Plaintiffs' filing of the Complaint in this action.

## CONCLUSION

For the reasons stated herein, as well as those stated in the Brief, Plaintiffs have failed to assert any valid claim upon which relief may be granted against Yuhas, and Yuhas should be awarded his reasonable attorneys' fees incurred in defending Plaintiffs' frivolous claims.

Respectfully submitted, this, the 6th day of August, 2015.

RAYBURN COOPER & DURHAM, P.A.

By: /s/ G. Kirkland Hardymon
    G. Kirkland Hardymon
    N.C. State Bar No. 19055
    khardymon@rcdlaw.net
    William S. Smoak, Jr.
    N.C. State Bar No. 39198
    wsmoak@rcdlaw.net
    Benjamin E. Shook
    N.C. State Bar No. 44793
    bshook@rcdlaw.net
    227 W. Trade St., Suite 1200
    Charlotte, NC 28202
    Tel. (704) 334-0891
    Fax (704) 377-1897

*Attorneys for Defendants*

**CERTIFICATE OF WORD COUNT**

The undersigned hereby certifies, pursuant to § 3(c)(ii) of the Court's Case Management Order, that the foregoing Defendants' Reply in Support of Motion to Dismiss, for Attorneys' Fees, and Request for Preliminary Hearing, inclusive of headings, footnotes, quotations, and citations, but exclusive of the case caption, table of contents, table or authorities, and certificates of counsel, is less than 2,000 words according to the word count reported by the word-processing software employed.

RAYBURN COOPER & DURHAM, P.A.

By: /s/ G. Kirkland Hardymon
G. Kirkland Hardymon
N.C. State Bar No. 19055
khardymon@rcdlaw.net
William S. Smoak, Jr.
N.C. State Bar No. 39198
wsmoak@rcdlaw.net
Benjamin E. Shook
N.C. State Bar No. 44793
bshook@rcdlaw.net
227 W. Trade St., Suite 1200
Charlotte, NC 28202
Tel. (704) 334-0891
Fax (704) 377-1897

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the **REPLY IN SUPPORT OF MOTION TO DISMISS, FOR ATTORNEYS' FEES, AND REQUEST FOR PRELIMINARY HEARING** was served on this date upon the parties in this action by ECF electronic service as follows:

>John R. Buric
>jburic@jmdlaw.com
>John R. Brickley
>Jbrickley@jmdlaw.com
>Jon P. Carroll
>jcarroll@jmdlaw.com
>JAMES, McELROY & DIEHL, P.A.
>600 South College Street
>Suite 3000
>Charlotte, NC 28202
>
>*Attorneys for Plaintiffs Legacy Data Access, Inc.*
>*and Dianne M. Peters*

This the 6th day of August, 2015.

/s/ G. Kirkland Hardymon_____
G. Kirkland Hardymon