UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:15-CV-00163-FDW-DCK

| | |
|---|---|
| DIANNE M. PETERS<br>LEGACY DATA ACCESS, INC.,<br><br>    Plaintiffs,<br><br>  v.<br><br>CADRILLION, LLC,<br>LEGACY DATA ACCESS, LLC,<br>JAMES YUHAS,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)   ORDER and JUDGMENT<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

THIS MATTER is before the Court on several of parties' post-trial motions: 1) Defendant Cadrillion's "Motion for New Trial or in the Alternative, Motion to Amend the Judgment", 2) Plaintiffs' "Motion to Alter Judgment", 3) Plaintiffs' Motion for Attorney's fees, and 4) Defendants' Motion for Attorney's fees. (Doc. Nos. 183, 185, 187, 191). In addition to the above filings, Plaintiffs' have submitted a bill of costs, which Defendant Cadrillion objects to. (Doc. Nos. 190, 196). Following extensive briefing, all of these post-trial motions are now ripe for review.

**Background**

This case is centered around an Asset Purchase Agreement ("APA") between Plaintiffs and Defendant Cadrillion. Through the APA, Cadrillion purchased Legacy Data Access, Inc.'s ("Legacy Georgia") assets by making two separate payments: 1) $513,000 to be paid on the closing date of the Agreement, and 2) a "Deferred Purchase Price," which was to paid upon certain triggering events. Cadrillion formed a subsidiary, Legacy Data Access, LLC ("Legacy North Carolina" to own the assets acquired from Legacy Georgia and hired Plaintiff Dianne Peters to

manage Legacy North Carolina for three years. In the event that Peters resigned from Legacy North Carolina after three years, but before Cadrillion could sell Legacy North Carolina, the APA provided Cadrillion with a "Call Option," defined as, "the right, but not the obligation, to exercise [the] option to purchase . . . the rights to the Deferred Purchase Price at the Call Price . . . ." (Doc. No. 17-1, p. 5). Essentially, if Cadrillion exercised the call option, it was obligated through the contract to deliver the call price to Plaintiffs. It is now undisputed that Cadrillion exercised the call option, but never paid the call price to Plaintiffs.

Plaintiffs filed suit in April 2015, alleging claims for breach of contract, conversion, abuse of process, and unfair and deceptive trade practices. At a first trial on liability and compensatory damages, the jury found Cadrillion liable for breach of contract and awarded $256,500 in compensatory damages. The jury also found Cadrillion and Yuhas liable on the conversion claim and awarded $1,499,999 in compensatory damages. The Court granted judgment as a matter of law for Defendants on the abuse of process claim, and the jury did not find liability as to Plaintiffs' unfair and deceptive trade practices claim. A second trial was commenced on the question of punitive damages, and the jury awarded Peters a total of $3 million in punitive damages. Following post-trial motions, the Court reduced the compensatory damages from the conversion claim to $460,406 and eliminated the compensatory damages from the breach of contract claim as double recovery. The Court reduced the punitive damages to a total of $1.38 million, granted Plaintiffs an award of pre- and post-judgment interest, and awarded Plaintiffs $743,297 in attorneys' fees.

Following the first set of trials, the case was subsequently appealed to the Fourth Circuit. Legacy Data Access, Inc. v. Cadrillion, LLC, 889 F.3d 158 (4th Cir. 2018). The Fourth Circuit affirmed the Court's judgment as to the abuse of process and unfair and deceptive trade practices claims, but reversed the Court's judgment on the conversion claim and punitive damages. Id. at

171. Defendants conceded liability as to the breach of contract claim at appeal, and this case was subsequently remanded for a new trial to determine damages for breach of contract. The Fourth Circuit also vacated the Court's award of attorney's fees for reassessment following the new trial.

A trial for breach of contract damages was held in January 2019 and the jury found that the Plaintiffs were entitled to recover $1,591,094 in damages. (Doc. No. 178). Following trial, parties filed several post-trial motions, which the Court will now address in turn, but not necessarily in the order of filing.

## Discussion

*A. Defendant Cadrillion's "Motion for New Trial or in the Alternative, Motion to Amend the Judgment"*

Defendant Cadrillion points to two alleged evidentiary errors as the basis for its motion for a new trial pursuant to Rule 59(a) of the Federal Rules of Civil Procedure. (Doc. No. 183). First, Cadrillion contends that the Court erred by allowing evidence as to the origination of certain adjustments to the Call Price. Cadrillion argues that such adjustments were prepared in the course of the parties' settlement negotiations and should have been excluded by Rule 408 of the Federal Rules of Evidence. (See Doc. No. 184, p. 5). Second, Cadrillion asserts that its manager, James Yuhas, should not have been permitted to testify during Plaintiffs' case-in-chief. See id. at 6.

A district court has discretion to grant or deny a Rule 59(a) motion for a new trial. Cline v. Wal-Mart Stores, Inc., 144 F.3d 294, 305 (4th Cir. 1998). A court may grant a new trial only if the verdict: 1) is against the clear weight of the evidence; 2) is based upon false evidence; or 3) will result in the miscarriage of justice. EEOC v. Consol Energy, Inc., 860 F.3d 131, 145 (4th Cir. 2017). When the motion for a new trial is based on purported evidentiary errors, a court should only set aside a jury verdict if the "error is so grievous as to have rendered the entire trial unfair." See id.; see also Creekmore v. Maryview Hosp., 662 F.3d 686, 693 (4th Cir. 2011). In general,

granting a new trial is "an extraordinary remedy that should be applied sparingly." Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc., 674 F.3d 369, 378 (4th Cir. 2012) (citation omitted).

In the present case, Cadrillion largely argues that it is entitled to a new trial because the Court allowed evidence regarding the origination of a $225,040 cost item. (See Doc. No. 184, p. 4). Cadrillion contends that this adjustment was calculated "during the course of the parties' early settlement negotiations" and therefore the timing and circumstances of such adjustments should be excluded as irrelevant by Rule 408 of the Federal Rules of Evidence. Id. at 5.

Rule 408 bars evidence of any statements or conduct from settlement negotiations for the purpose of facilitating open negotiations around settlement. Fiberglass Insulators, Inc. v. Dupuy, 856 F.2d 652, 654 (4th Cir. 1988). However, Rule 408 does not shield underlying facts simply because the facts may have been also stated in a settlement negotiation. See Fed. R. Evid. 408, Advisory Committee Notes, 1974 Enactment (stating that the factual exception to the rule insures "that evidence, such as documents, is not rendered inadmissible merely because it is presented in the course of compromise negotiations if the evidence is otherwise discoverable").

Here, the only factual question for the jury at trial was to determine the value of the Call Price, taking into account any "upward and downward adjustments." (See Doc. No. 17-1, p. 16 (portion of the APA that describes the calculation of the deferred purchase price)). According to the APA, all calculations, including any adjustments, "shall be made in good faith." Id. At trial, Cadrillion's own expert used the $225,040 deduction to calculate Cadrillion's proffered Call Price. (See Doc. No. 164-1, p. 15 (incorporating the $225,040 deduction into Mr. Kimball's expert witness report)). Furthermore, Cadrillion's expert admitted, on cross-examination, that he relied on James Yuhas for the $225,040 figure and did not do any other form of investigation as to the figure's accuracy. (See Rough Trial Trans., Jan. 23, 2019, p. 213). Thus, evidence as to the

$225,040 deduction and the circumstances in which it was calculated was a crucial issue of fact in determining the validity of Cadrillion's proffered Call Price and therefore not barred by Rule 408. Rule 408 does not allow a party to make a factual calculation, <u>use that calculation to their advantage at trial</u>, and simultaneously prevent the opposing party from inquiring into the relevant circumstances around the factual calculation on the basis that the calculation may have also factored into early settlement negotiations.[1]

Jim Yuhas was also properly allowed to testify in this trial. As explained before, Cadrillion's expert, on cross examination, admitted to the jury that he accepted certain deduction amounts from Yuhas without further investigation. (<u>See</u> Rough Trial Trans., Jan. 23, 2019, p. 213). It is certainly understandable that Cadrillion would not have called Yuhas themselves for their case in chief, but that does not foreclose Plaintiff from calling a highly material witness to challenge a significant portion of Cadrillion's Call Price calculation.

Even assuming, *in arguendo*, that the Court erred in allowing in the above evidence, Cadrillion has made no showing of prejudice or shown that the trial reached an unfair result. <u>See</u> <u>Consol Energy</u>, 860 F.3d at 146 (requiring a new trial only when the verdict is against the "clear weight of the evidence" or resulting in a "miscarriage of justice"). The ultimate jury verdict was within the range of the accredited testimony from the two expert witnesses and Cadrillion has made no showing of an unfair result. Therefore, for the above reasons, Defendant Cadrillion's Motion for a New Trial, (Doc. No. 183), is denied.[2]

---

[1] The Court notes that pursuant to Rule 408, the Court did not allow Plaintiff to present evidence of the actual settlement offers and figures and gave substantial limiting instructions to the jury on the issue.

[2] The alternative relief sought in this motion is also sought in Plaintiffs Motion to Alter Judgment, (Doc. No. 185), and the Court will address that request later in this order.

*B. Defendants' Motion for Attorney's fees*

Defendants, collectively, have moved for this Court to award attorney's fees in the amount of $272,553.69 for the successful defense against Plaintiffs' tort claims.[3] (Doc. No. 187, p. 2). Specifically, Defendants argue that Plaintiffs' claims for conversion, abuse of process, unfair and deceptive trade practices ("UDTP"), and punitive damages "lack[ed] any basis in law since they were founded upon Cadrillion's breach of contract." (Doc. No. 189, p. 1–2). Defendants' requests for attorney's fees fall into two distinct categories: 1) fees arising from claims that Defendants had prevailed on after the first jury trial (abuse of process and UDTP claims), and 2) fees arising from claims that Defendants prevailed after appeal to the Fourth Circuit (conversion and punitive damages claims).

The Court will first discuss Defendants' request for fees regarding the first category. After evidence was presented in the first jury trial in 2016, the Court dismissed Plaintiffs' abuse of process claim pursuant to Rule 50(a) of the Federal Rules of Civil Procedure. The first jury also found that Defendants were not liable to Plaintiffs for unfair and deceptive trade practices and the Court's judgment was entered on October 4, 2016. (Doc. No. 86). Rule 54 of the Federal Rules of Civil Procedure states that, absent a court order or statute, motions for attorney's fees must "be filed no later than 14 days after the entry of judgment." Fed. R. Civ. P. 54(d)(2)(B)(i). Defendants, despite prevailing on the abuse of process and UTDP claims back in 2016, did not promptly file a motion for attorney's fees, the Court did not consider any issues regarding fees on these claims while ruling on post-trial motions, and these issues were not subsequently appealed to the Fourth Circuit.

---

[3] In the alternative, Defendants move to recover their full attorney's fees in the amount of $598,564.75. (Doc. No. 187, p. 2).

Defendants now contend that Plaintiffs' conduct in October 2018, more than two years after the first trial, waived their rights to object to the timeliness of any attorney's fees. (See Doc. No. 204, p. 1–2). Following the appeal to the Fourth Circuit, this Court held a status conference on October 16, 2018, where the parties generally agreed to have the Court resolve all attorney's fee motions following the second trial on damages. (Doc. No. 205, p. 14). The parties' agreement around the timing of any additional attorney's fee motions did not give Defendants *carte blanche* to move for the attorney's fees that they should have requested two years prior to the status conference. Thus, Defendants' request for attorney's fees for Plaintiffs' abuse of process and UDTP claims are untimely and are hereby denied.

The Court will now consider whether Defendants' are entitled to fees from Plaintiffs' conversion and punitive damages claims. This second category of fees differs from the first category in that Defendants' did not prevail upon these claims until the Fourth Circuit decided the appeal. The Court first notes that these fee requests, following the Fourth Circuit's decision, may also be untimely. According to the Advisory Committee's Notes on Rule 54, "a new period for filing will automatically begin if a new judgment is entered following a reversal or remand by the appellate court." Fed. R. Civ. P. 54, Advisory Committee Notes, 1993 Amendments; see also Peter B. v. Buscemi, C/A No. 6:10-767-TMC, 2017 WL 4457775, at *2 (D.S.C. July 28, 2017) (noting that the entry of an appellate judgment "triggers the running (for the second time) of the fourteen-day time period set forth in Rule 54(d)(2)(B)"). Nonetheless, because of the parties' general agreement at the October 16, 2018 status conference that all attorney's fee motions be handled after trial, (see Doc. No. 205, p. 14), the Court finds good cause to excuse Defendants for any technical lateness in bringing a motion for this portion of their fees. Therefore, the Court will

consider the substantive arguments of whether Defendants are entitled to attorney's fees from Plaintiffs' conversion and punitive damages claims.

Defendants argue that they are entitled to attorney's fees from these claims under North Carolina General Statutes § 6-21.5 and § 1D-45. (Doc. No. 189, p. 2). Section 6-21.5 states that "[i]n any civil action . . . the court, upon motion of the prevailing party, may award a reasonable attorney's fee to the prevailing party if the court finds that there was a complete absence of a justiciable issue of either law or fact raised by the losing party in any pleading." N.C. Gen. Stat. § 6-21.5 (2019). A party is a "prevailing party" under § 6-21.5 when it prevails on a specific claim or issue, regardless of whether it prevails in the overall action. Persis Nova Const., Inc. v. Edwards, 671 S.E.2d 23, 30 (N.C. Ct. App. 2009).

> A justiciable issue is one that is real and present, as opposed to imagined or fanciful. In order to find a complete absence of a justiciable issue it must conclusively appear that such issues are absent even giving the pleadings the indulgent treatment they receive on motions for summary judgment or to dismiss. Under this deferential review of the pleadings, a plaintiff must either: (1) reasonably have been aware, at the time the complaint was filed, that the pleading contained no justiciable issue; or (2) be found to have persisted in litigating the case after the point where he should reasonable have become aware that [the] pleading he filed no longer contained a justiciable issue.

McLennan v. C.K. Josey. Jr., 785 S.E.2d 144, 148 (N.C. Ct. App. 2016) (citations and internal quotations omitted).

Section 1D-45 allows a party defending against a punitive damages claim to recover attorney's fees when the claimant either knew or should have known that the punitive damages claim was "frivolous or malicious." N.C. Gen. Stat. § 1D-45 (2019). "A claim for punitive damages is frivolous where its proponent can present no rational argument based upon the evidence or law in support of it." Phillips v. Pitt Cty. Memorial Hosp., Inc., 775 S.E.2d 882, 884 (N.C. Ct. App. 2015) (citations and internal quotations omitted). "A claim is malicious where it

is wrongful and done intentionally without just cause or excuse or as a result of ill will." Id. (citations and internal quotations omitted).

Here, because Plaintiffs' claim for conversion did not amount to a "complete absence of a justiciable issue," Defendants therefore are not entitled to an award of attorney's fees. Under North Carolina law, a breach of contract generally "does not give rise to a tort action by the promisee against the promisor." N.C. State Ports Auth. V. Lloyd A. Fry Roofing Co., 240 S.E.2d 345, 350 (N.C. 1978). However, there are several categorical exceptions to this general rule, one being: "the injury so caused was a willful injury to or a conversion of the property of the promise, which was the subject of the contract, by the promisor." Id. at 351. While the two cases cited to in N.C. State Ports Authority to support this exception involved bailor-bailee relationships, there was no previous authority that stated that the conversion exception was limited only to bailor-bailee relationships. In fact, a number of Federal Courts had previously applied the exception to situations outside of the bailor-bailee context. (See Doc. No. 106, p. 6 n.1 (gathering cases)). Additionally, the Fourth Circuit's previous holdings on the economic loss rule did not directly address the potential exception to the rule for conversion. See Broussard v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331, 346 (4th Cir. 1998) (addressing claims other than conversion); Strum v. Exxon Co., 15 F.3d 327, 329, 331 (4th Cir. 1994) (dismissing claims of fraudulent inducement, negligence, and gross negligence).

Of course, the Fourth Circuit later clarified the law governing this case in its decision remanding this case and dismissing Plaintiffs' conversion claim and resulting punitive damages. But that result, in hindsight, does not make Plaintiffs' original claims "frivolous" or devoid of a "justiciable issue." McLennan, 785 S.E.2d at 148 (holding that the subsequent ruling as a matter of law for one party does not, by itself, justify an award of attorney's fees and that fees related to

an appeal are not recoverable under N.C. Gen. Stat. § 6-21.5). Awarding attorney's fees to Defendants' in this case simply because the Fourth Circuit decided in their favor would force Plaintiffs to solitarily bear the consequences of an ambiguity in the law and this Court's own rulings that allowed the claim to proceed to trial. See Free Spirit Aviation, Inc. v. Rutherford Airport Auth., 696 S.E.2d 559, 564 (N.C. Ct. App. 2010) ("To rule in defendants' favor, we would have to hold that a plaintiff is required to voluntarily abandon a claim even though a court has ruled that the claim may go to trial."); see also N.C. R. Prof'l Resp. 3.1, Comment 1 ("[T]he law is not always clear and never is static. Accordingly, in determining the proper scope of advocacy, account must be taken of the law's ambiguities and potential for change.").

For these reasons, Defendants' request for attorney's fees arising out of Plaintiffs' conversion and punitive damages claims is denied. Defendants' Motion for Attorney's fees, (Doc. No. 187), is therefore denied in its entirety.

*C. Plaintiffs' Motion for Attorney's fees*

Plaintiffs have moved for an award of attorney's fees in the amount of $1,463,054.00, pursuant to the APA's reciprocal attorney's fee provision and N.C. Gen. Stat. § 6-21.6. (Doc. No. 206, p. 3). Defendants do not contest that the APA contains an enforceable reciprocal attorney's fee provision,[4] but argue that the amount Plaintiffs seek to recover is unreasonable.

When a "case is a diversity action based on state contract law, the contract, including its provisions on attorneys' fees, is to be interpreted using state law." W. Insulation, LP v. Moore, 362 F. App'x 375, 379 (4th Cir. 2010). N.C. Gen. Stat. § 6-21.6 governs the awarding of attorney's fees under reciprocal attorney's fee provisions in business contracts. According to § 6-21.6, when

---

[4] To the extent Defendants do challenge the enforceability of this provision, the Court incorporates its ruling and reasoning from the first set of trials as to the enforceability of the attorney's fee provision. (See Doc. No. 106, p. 19–20 (ruling that "Plaintiffs are entitled to reasonable attorneys' fees within the Court's discretion")).

determining the proper amount of fees, a court "may consider all relevant facts and circumstances." N.C. Gen. Stat. § 6-21.6. Section 6-21.6 enumerates a non-exhaustive list of the factors that a court may consider: 1) the amount in controversy and the results obtained; 2) the reasonableness of the time and labor expended, and the billing rates charged; 3) the novelty and difficulty of the questions raised in the action; 4) the skill required to properly perform the legal services; 5) the relative economic circumstances of the parties; 6) settlement offers made prior to the institution of the action; 7) offers of consent judgments and whether judgment finally obtained was more favorable than offers; 8) whether a party unjustly exercised superior economic bargaining power in the conduct of the action; 9) the timing of settlement offers; 10) the amounts of settlement offers as compared to the verdict; 11) the extent to which the party seeking attorneys' fees prevailed in the action; 12) the amount of attorneys' fees awarded in similar cases; and 13) the terms of the business contract. Id. § 6-21.6(c).

Based on the procedural history of this case, the Court will consider Plaintiffs' request as to fees from three distinct phases of this litigation: 1) from the first set of trials; 2) fees incurred during appeal to the Fourth Circuit; and 3) fees incurred following remand. Throughout all three phases, the Court finds it appropriate to apply the current hourly rates, as opposed to the historical hourly rates, to compensate Plaintiffs for the delay in payment as well as the lost time value of money. See Reaching Hearts Intern., Inc. v. Prince George's Cty., 478 F. App'x 54, 60 (4th Cir. 2012) ("[I]n the typical case, an appropriate way to compensate for a delay in payment for attorneys' fees is . . . to use the current hourly rates instead of historical ones . . . ."); see also Missouri v. Jenkins, 491 U.S. 274, 283–84 (1989) ("Clearly, compensation received several years after the services were rendered . . . is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed, as would normally be the case with private billings.").

i. Fees from the first set of trials ("First Period")

Plaintiffs are requesting a total of $897,280[5] in attorney's fees that were incurred before February 8, 2017 (the date of this Court's final, amended judgment from the first set of trials). Previously, the Court had awarded Plaintiffs their full attorney's fees, calculated using then-current rates, partially because Plaintiffs "obtained an extremely favorable result." (Doc. No. 106, pp. 20, 22). At the time, Plaintiffs had prevailed at trial on both their breach of contract and conversion claims and stood to recover a total of $1,841,624, plus interest, in compensatory and punitive damages. (See Doc. No. 106, p. 20). However, Plaintiffs' claim for conversion and punitive damages, along with the previous attorney's fee award, were later vacated by the Fourth Circuit. Legacy Data Access, 889 F.3d at 171. The Court finds that this subsequent history, which took away many of Plaintiffs' victories from the first set of trials, warrants a reduction of Plaintiffs' fee award from the first period. See N.C. Gen. Stat. § 6-21.6(c)(11) (factoring in "[t]he extent to which the party seeking attorneys' fees prevailed in the action").

Defendant Cadrillion contends that the Court may reduce the total requested fees by 45% to account for time spent on Plaintiffs' extracontractual claims that were later dismissed by the Fourth Circuit. (See Doc. No. 198, p. 5). This percentage appears to be extrapolated from Mr. Hardymon's own sense of the percentage of time that he was billing to defend against Plaintiffs' various claims. See id. But Mr. Hardymon's perspective from Defendants' side is, at best, only minimally relevant as to how Plaintiffs' counsel billed time for their individual claims. Furthermore, the factor proposed by Cadrillion is still extremely arbitrary, and it would be inappropriate to apply it to reduce Plaintiffs' attorney's fee award. See Perdue v. Kenny A., 559 U.S. 542, 558 (2010) (holding that even when a trial judge has discretion to award reasonable

---

[5] This number was calculated by taking Plaintiffs' total requested amount and subtracting the requested fees from the other two periods. (See Doc. No. 210, pp. 1–2).

attorney's fees, it is nonetheless "essential that the judge provide a reasonably specific explanation for all aspects of a fee determination").

Instead, the Court will exclude all hours billed between May 14, 2016 and October 4, 2016 from Plaintiffs' award of attorney's fees. For most of the first period, Plaintiffs' extracontractual and contract claims were "inextricably interwoven," and therefore, it would be improper and impractical to attempt to apportion Plaintiffs' fees on a claim by claim basis. See Whiteside Estates, Inc., v. Highlands Cove, L.L.C., 553 S.E.2d 431, 443 (N.C. Ct. App. 2001) (holding that when a plaintiff's "claims arise from the same nucleus of operative facts and each claim was 'inextricably interwoven' with the other claims . . . apportionment of the fees [becomes] unnecessary and unrealistic") (citation omitted). However, following the jury's verdict in the first trial on liability and compensatory damages on May 13, 2016, Parties began preparing for the following punitive damages trial, which solely stemmed from Plaintiffs' extracontractual claims. Therefore, the Court finds it appropriate to exclude the fees billed from May 14, 2016 through October 4, 2016, the date of the punitive damages trial, because almost all of the hours billed during this period related to Plaintiffs' extracontractual claims and the punitive damages trial. (See Doc. No. 192-1, pp. 38–49 (stating time entries from this period)). The Court has reviewed the record and finds that the following fees should be excluded from Plaintiffs' attorney's fee award:

| Name of Billing Agent | Fees Calculation[6] | Total Fees |
|---|---|---|
| John S. Arrowood (JSA) | 42.8 hours X $400/hour | $17,120 |
| Preston O. Odom, III (POO) | 70.4 hours X $375/hour | $26,400 |
| John R. Brickley (JB) | 137.4 hours X $325/hour | $44,655 |
| John R. Buric (JRB) | 104.4 hours X $475/hour | $49,590 |

---

[6] Because Plaintiffs' award is calculated using the current hourly rates, these deductions are also calculated using the current hourly rates.

| Jon P. Carroll (JPC) | 27.2 hours X $350/hour | $9,520 |
|---|---|---|
| Sarah Williamson (SAW) | .4 hours X $130/hour | $52 |
| Michael O'Hara (MJO) | 2.2 hours X $150/hour | $330 |
| Jennifer M. Houti (JMH) | 1.5 hours X $210/hour | $315 |
| Richard B. Fennell | .6 hours X $400/hour | $240 |
| Totals | 386.9 hours | $148,222 |

Plaintiffs are entitled to the remaining attorney's fees of $749,058 from the first period. These fees account for the approximately 1,995 hours billed by Plaintiffs counsel from April 13, 2015 through May 13, 2016 and October 5, 2016 through February 7, 2017. The Court has carefully reviewed the billing statements submitted and finds that the hours billed by the law firm and the rates charged are reasonable. Furthermore, many of the factors addressed by the Court in its earlier order are still applicable at this time and support a substantial award of attorney's fees, such as: the novelty and difficulty of the questions presented; the degree of skill exhibited by counsel; and Cadrillion's misuse of superior economic bargaining power. (See Doc. No. 106, p. 20–21 (discussing factors contained in N.C. Gen. Stat. § 6-21.6(c))). For these reasons, the Court finds that Plaintiffs are entitled to recover $749,058 in attorney's fees for the first period.

    ii.    Fees incurred on appeal ("Second Period")

Plaintiffs request a total of $241,235 in attorney's fees incurred between February 8, 2017 and May 3, 2018. (Doc. No. 210, p. 1). These dates represent the period between this Court's judgment from the first trial and the publication of the Fourth Circuit's decision; therefore, Plaintiffs' request for the second period is essentially for attorney's fees incurred on appeal.

The Court finds that Plaintiffs are not entitled to any fees incurred from this case's appeal to the Fourth Circuit. The Fourth Circuit dismissed Plaintiffs' claims for conversion and punitive

damages and affirmed the judgment against Plaintiffs on their abuse of process and unfair and deceptive trade practices claims. Legacy Data Access, 889 F.3d at 171. In short, Plaintiffs did not prevail on a single significant issue on appeal, and therefore, the Court will not award any attorney's fees for the second period. See N.C. Gen. Stat. §6-21.6(c) (considering "the extent to which the party seeking attorneys' fees prevailed in the action").

      iii.     Fees incurred following remand ("Third Period")

Plaintiffs' submit that they are entitled to recover $324,539 in attorney's fees for legal work performed following remand. The Court finds that this requested fee is reasonable upon consideration of all of the relevant circumstances. See N.C. Gen. Stat. § 6-21.6(c). In particular, the Court notes that even on remand, this litigation was still very complex. Trying this case required the attorneys to be intimately familiar with advanced accounting principles, and perhaps more importantly, required the attorneys to have the skills to properly present those complex concepts to a lay jury. See id. (factoring in the complexity of the litigation and "the skill required to perform properly the legal services rendered"). Considering the complexity of the case, and Defendant Cadrillion's decision to procure a new expert witness for the damages trial, the number of hours expended by Plaintiffs' counsel (approximately 850 total hours) was reasonable. (See Doc. No. 192-1, pp. 68–79; Doc. No. 206-1, pp. 3–6). The rates billed by Plaintiffs' attorneys are also reasonable and typical of the billing rates in the local market for similar work. Finally, Plaintiffs obtained a very favorable result for their clients by obtaining a jury award of damages near the upper range of the accredited testimony. For these reasons, the Court finds that Plaintiffs are entitled to recover $324,539 in attorney's fees, calculated at current hourly rates, for the legal services performed following remand of this case from the Fourth Circuit.

iv.     Nontaxable expenses

Plaintiffs also request $61,125.18 in nontaxable expenses. (Doc. No. 192, p. 15; Doc. No. 206-2, p. 1). The Court notes that, in addition to attorney's fees, the APA provides for recovery of "other reasonable expenses of the proceeding as the prevailing party may incur." See Trial Exh. 1, p. 51. The Court has reviewed the entirety of Plaintiffs' expense reports, (Doc. No. 192-2), and finds it appropriate to award expenses in the amount of $59,482.40 after deducting the hotel and mileage expenses associated with appeal and the filing fee for Plaintiffs' Notice of Appeal.[7]

Plaintiffs' Motion for Attorneys' Fees and Related Nontaxable Expenses, (Doc. No. 191), is hereby granted with modification. The Court finds that Plaintiffs are entitled to recover a total of $1,073,597 in attorney's fees and $59,482.40 in nontaxable expenses under the APA.

*D. Bill of Costs*

Plaintiffs also seek to recover various taxable costs and fees in the amount of $10,811.27 under 28 U.S.C. § 1920. (Doc. No. 190). Defendant Cadrillion specifically objects to $4,569.03 of these costs for various reasons. The Court will now consider each of Cadrillion's objections in turn.

Cadrillion first objects to the inclusion of a $2,587.73 cost associated with expediting a deposition transcript of Jim Yuhas. Costs from the expedited production of transcripts have generally "been allowed only when the party can show the necessity for the expedited service." EEOC v. Propak Logistics, Inc., No. 1:09-cv-311, 2013 WL 1232959, at *7 (W.D.N.C. Mar. 27, 2013). Here, Plaintiffs have explained that an expedited transcript for this deposition was necessary given the impending dispositive motions deadline. (Doc. No. 201, p. 2). Unlike the plaintiff in Propak, who made no response to an objection for costs, the Court finds that Plaintiffs

---

[7] The Court will consider whether this filing fee can alternatively be recovered as a taxable cost later in this order.

have properly shown that expedited production was necessary. See Propak, 2013 WL 1232959, at *7 ("Propak has not responded in any manner to the EEOC's objection to the taxation of expedited deposition charges."). Therefore, the $2,587.73 cost will be taxed to Cadrillion.

Second, Cadrillion objects to $220.32 in costs from serving subpoenas on various banks and $247.20 in costs from serving James Yuhas and Legacy North Carolina on the grounds that such costs arose from Plaintiffs' "frivolous assertion of tort claims." (Doc. No. 197, p. 4). As the Court previously explained, Plaintiffs' extracontractual claims, while ultimately unsuccessful, were justiciable and not frivolous. The objection is therefore overruled and these costs will be taxed to Cadrillion.

Third, Cadrillion objects to taxing $505 in fees from Plaintiffs filing their cross-appeal to the Fourth Circuit. The Fourth Circuit has already denied the taxing of at least $500[8] of these fees, and this Court does not have the power to overturn the Fourth Circuit's decision as to those fees. (See Doc. No. 197-1, p. 1). To the extent the Fourth Circuit did not previously deny Plaintiffs' request for the $5 filing fee, as argued by Plaintiffs, (Doc. No. 201, p. 6), this Court hereby denies the requested additional filing fee. As the Court noted previously, Plaintiffs were wholly unsuccessful on appeal, and therefore cannot recover expenses from appeal under 28 U.S.C. § 1920 or the APA. The Court will sustain Cadrillion's objection to this fee and the $505 fee will not be taxed.

Fourth, Cadrillion objects to witness costs of $96.36 regarding Curtis Elliot and Robert Phillips and process server costs of $278.30 that Plaintiffs incurred in attempting to serve Verl Purdy. Cadrillion states that because these witnesses "were not called to testify" at trial, the costs were therefore not necessary or recoverable. (Doc. No. 197, p. 5). However, just because Plaintiffs

---

[8] To the extent the Fourth Circuit did not previously deny Plaintiffs' request for the $5 filing fee, as argued by Plaintiffs, (Doc. No.  this Court hereby denies the award of $5

ultimately did not choose to call Mr. Elliot and Mr. Phillips at trial does not mean that their presence was not "necessary." Both of these witnesses testified at the first set of trials, and had relevant knowledge as to the call price calculation. It is fully understandable that Plaintiffs wanted to have these witnesses on hand for trial on the chance that their testimony became necessary. See W.D.N.C. Bill of Costs Handbook, p. 7 ("Generally, the Clerk will tax reasonable . . . service fees for trial subpoenas for witnesses who are present and available to testify . . . ."). Additionally, Mr. Purdy was understandably subpoenaed in discovery because of Defendants' own earlier interrogatory responses identified him as a person possession knowledge of the APA and Call Price. (Doc. No. 47-13, p. 5). Cadrillion's objection is overruled and these costs will be taxed.

Fifth, and finally, Defendants object to "copy charges" in the amount of $634.12. Plaintiffs have explained that such costs were associated with producing demonstratives for use during the first phase of trial. (Doc. No. 201, p. 9). The timing of the charge along with the billing entry supports Plaintiffs' explanation for this charge. (See Doc. No. 192-1, p. 3 ("Reimbursement for trial prep expense-Fedex")). Therefore, the Court finds that this is a recoverable cost and overrules Defendants' objection. See W.D.N.C. Bill of Costs Handbook, p. 11 ("[E]nlargements of exhibits and like material are taxable . . . .").

The Court therefore finds that Plaintiffs are entitled to recover $10,306.27 in taxable costs and fees under 28 U.S.C. § 1920.

### Conclusion

For the reasons stated above, Defendant Cadrillion's Motion for New Trial, (Doc. No. 183), is DENIED; Defendants' Motion for Attorney's fees, (Doc. No. 187), is DENIED; and Plaintiffs' Motion for Attorney's fees, (Doc. No. 191), is GRANTED WITH MODIFICATION.

Additionally, the Court hereby GRANTS Plaintiffs' Motion to Alter Judgment, (Doc. No. 185), which is largely unopposed, and amends the judgment in this case as follows:

1. Defendant Cadrillion is liable to Plaintiffs for breach of contract in the amount of $1,414,658.[9]

2. Defendant Cadrillion is liable to Plaintiffs for $444,939.01 in prejudgment interest.

3. Defendant Cadrillion is liable to Plaintiffs for $1,073,597 in attorney's fees.

4. Defendant Cadrillion is liable to Plaintiffs for $59,482.40 in related, nontaxable expenses.

5. Plaintiffs are entitled to recover $10,306.27 in taxable costs and fees from Defendant Cadrillion.

6. Plaintiffs are entitled to post-judgment interest at a rate of 2.58%, to be compounded annually from January 25, 2019, until the judgment is satisfied.

The Clerk of Court is respectfully DIRECTED to enter the Court's judgment in accordance with this order.

IT IS SO ORDERED.

Signed: August 8, 2019

Frank D. Whitney
Chief United States District Judge

---

[9] Both parties agreed at trial and during post trial motions that the jury award would be decreased by $176,436 to account for the value of an outstanding loan.